UNITED STATES PATENT AND TRADEMARK OFFICE
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**

This Decision is a
Precedent of the TTAB

jk

Mailed:  December 28, 2010

Cancellation No. 92052292

Petróleos Mexicanos

v.

Intermix S.A.

Before Quinn, Kuhlke and Mermelstein,
Administrative Trademark Judges.

By the Board:

Respondent Intermix S.A. owns a registration for the mark PEMEX (standard characters) for "crude oil and refined petroleum products, namely, fuels and industrial oils, greases, and lubricants" in International Class 4, "advertising, management of business affairs and commercial functions of an industrial or commercial enterprise regarding services related to the oil industry and crude-oil and refined petroleum products" in International Class 35, and "oil refining" in International Class 40.[1]

Petróleos Mexicanos ("petitioner") filed a petition to cancel the registration on the grounds of 1) false suggestion of a connection under Trademark Act Section 2(a); 2) priority

---

[1] Registration No. 3683663, issued September 15, 2009, from an application filed August 14, 2007, based on a bona fide intent to use the mark in commerce under Trademark Act Section 1(b), and converted to a Section 1(a) application by the filing of a statement of use setting forth January 1, 2009 as the date of first use anywhere and date of first use in commerce, for all goods and services identified.

and likelihood of confusion under Trademark Act Section 2(d); and 3) fraud.

In lieu of filing an answer, respondent moved to dismiss the petition under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, arguing that petitioner lacks standing, and has failed to sufficiently plead any ground for cancellation. The motion is fully briefed.

Legal Standards

A motion to dismiss for failure to state a claim upon which relief can be granted is a test solely of the legal sufficiency of a complaint. In order to withstand such a motion, a pleading need only allege such facts as would, if proved, establish that petitioner is entitled to the relief sought, that is, that 1) petitioner has standing to maintain the proceeding, and 2) a valid ground exists for cancelling the subject registration. *Fair Indigo LLC v. Style Conscience,* 85 USPQ2d 1536, 1538 (TTAB 2007); *Young v. AGB Corp*., 152 F.3d 1377, 47 USPQ2d 1752, 1755 (Fed. Cir. 1998). *See also* TBMP § 503.02 (2d ed. rev. 2004). The "valid ground" for cancellation of a registration that must be alleged and ultimately proved must be a statutory ground which negates the registrant's right to maintain the subject registration. *Cf. Young v. AGB,* 47 USPQ2d at 1754. For purposes of determining the motion, all of the petitioner's well-pleaded allegations must be accepted as true, and the complaint must be construed in the light most favorable to petitioner. The pleading must be construed so as to do

justice, as required by Fed. R. Civ. P. 8(e).  *See also Otto Int'l Inc. v. Otto Kern GmbH,* 83 USPQ2d 1861, 1862 (TTAB 2007).

To establish its standing, petitioner must prove that it has a "real interest" in the proceeding and a "reasonable basis" for its belief of damage.  To plead a "real interest" in the case, it must allege a "direct and personal stake" in the outcome of the proceeding, and the allegations in support of its belief of damage must have a reasonable basis in fact.  *See Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1027 (Fed. Cir. 1999); TBMP § 309.03(b)(2d ed. rev. 2004).

If petitioner establishes its standing with respect to any pleaded ground for cancellation, it has the right to assert any other ground as well, that also has a reasonable basis in fact. *See Lipton Indus., Inc. v. Ralston Purina Co*., 670 F.2d 1024, 213 USPQ 185, 188 (CCPA 1982); *Enbridge Inc. v. Excelerate Energy LP,* 92 USPQ2d 1537, 1543 n.10 (TTAB 2009), citing *Liberty Trouser Co., Inc. v. Liberty & Co*., 222 USPQ 357, 358 (TTAB 1983).

Analysis

In its motion, respondent essentially argues that petitioner lacks standing because it has neither pleaded use nor registration of its mark in the United States, nor otherwise pleaded any trademark rights in its mark that are protectable in the United States.  Respondent further argues that petitioner cannot rely on the alleged fame of its mark in Mexico, using a "famous mark theory," so as to demonstrate such

rights and establish its standing to challenge the registration.

With respect to the Section 2(a) ground for cancellation, petitioner is not required to allege proprietary rights in its name for standing purposes. *See Estate of Biro v. Bic Corp.,* 18 USPQ2d 1382, 1385 (TTAB 1991). In asserting a 2(a) claim, a petitioner may have standing by virtue of who petitioner is, that is, its identity. *Id.*

Section 2(a) bars registration of a mark that falsely suggests a connection with persons, living or dead, or institutions, beliefs, or national symbols. The following is required for a pleading of false suggestion of a connection under Trademark Act Section 2(a):

(1) The mark sought to be registered is the same as, or a close approximation of, the name or identity previously used by another person or institution;

(2) The mark would be recognized as such, in that it points uniquely and unmistakably to that person or institution;

(3) The person or institution identified in the mark is not connected with the goods sold or services performed by applicant under the mark; and

(4) The fame or reputation of the named person or institution is of such a nature that a connection with such person or institution would be presumed when applicant's mark is used on its goods and/or services.

*See Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.,* 703 F.2d 1372, 217 USPQ 505, 508-10 (Fed. Cir. 1983); *Buffet v. Chi-Chi's, Inc.,* 226 USPQ 428, 429 (TTAB 1985).

In its petition to cancel, petitioner alleges, in pertinent part:

4

21.  Respondent's "PEMEX" mark that is the subject of Reg. No. 3,683,663 is identical to the PEMEX Mark used by another person or institution, Petitioner Pemex. Petitioner used the PEMEX Mark for decades prior to Respondent's filing date and alleged use of its mark.

22.  Consumers are likely to recognize that the name and mark "PEMEX" points uniquely and unmistakably to Petitioner, given the fame and renown of Petitioner.

23.  Petitioner is not connected or affiliated with Respondent, Respondent's activities, or Respondent's Alleged Mark.

24.  As set forth above, Petitioner's PEMEX name, mark, and identity is famous and renowned such that consumers would presume a connection between Respondent and Petitioner when they encounter Respondent's registration for, and/or alleged use of, "PEMEX" in connection with identical oil and gas goods and services.

25.  Thus, Respondent's Alleged Mark falsely suggests a connection with Petitioner and its PEMEX Mark, in violation of Lanham Act § 2(a), and is not entitled to registration and is subject to cancellation.

Accordingly, petitioner has set forth allegations which have a reasonable basis in fact, and which, if proven, would establish that it has a personal interest in the outcome of this proceeding beyond that of the general public. *See Ritchie v. Simpson,* 50 USPQ2d at 1025-26. Thus, petitioner has sufficiently pleaded its standing to bring this proceeding. *See Association Pour la Defense et la Promotion de L'Oeuvre de Marc Chagall dite Comite Marc Chagall v. Bondarchuk,* 82 USPQ2d 1838, 1841 (TTAB 2007); *Order of Sons of Italy in America v. Profumi Fratelli Nostra AG,* 36 USPQ2d 1221, 1223, (TTAB 1995). Moreover, petitioner has sufficiently set forth the elements of a Section 2(a) claim, and thus has pleaded that respondent obtained its registration contrary to a statutory bar to

registration.  In particular, petitioner specifically pleaded that it is the actual institution with which consumers will presume a false suggestion of a connection when confronted with respondent's identical PEMEX mark, and which is allegedly implicated by that false suggestion.[2]  *See Aruba v. Excelsior Inc.,* 5 USPQ2d 1685 (TTAB 1987).

As noted above, the Section 2(a) claim is sufficiently pleaded.  Regarding priority and likelihood of confusion under Section 2(d), we also find that, for pleading purposes, petitioner has sufficiently set forth the grounds for its claims.  Petitioner alleges that it has "extensive business activities" (petition, para. 4) in the United States, although respondent argues that "'business activities' falls far short of alleging the bona fide use *of the trademark* in commerce in the United States on goods or services as required by 15 U.S.C. § 1127."  (Mot. at 3, n.1, emphasis in original).  However,

---

[2] Respondent's reliance on *Bayer Consumer Care AG v. Belmora LLC,* 90 USPQ2d 1587 (TTAB 2009), is misplaced inasmuch as that case did not involve a Section 2(a) claim, and as noted above, petitioner need not assert a proprietary interest to assert a Section 2(a) claim.  *See Hornby v. TJX Companies Inc.*, 87 USPQ2d 1411 (TTAB 2008) (petitioner that had abandoned use in the United States of her personal name mark, was unable to prevail on either a likelihood of confusion or dilution claim, but was able to prevail on a claim of false suggestion of a connection with petitioner's persona, due to continuing fame and reputation of petitioner within the United States).  *Cf. Fiat Grp. Automobiles S.p.A. v. ISM Inc.,* 94 USPQ2d 1111, 1113, 1115 (TTAB 2010) ("[T]o the extent the 'well known mark' doctrine is recognized at all, pleading only use of such a mark outside the United States, without any pleading of widespread recognition of mark within the United States as signifying a particular source of goods, even if such source is anonymous, is an insufficient basis for a claim of dilution. … We must, however, at least recognize the possibility that, in an unusual case, activity outside the United States related to a mark could potentially result in the mark becoming well-known within the United States, even without any form of activity in the United States").

while an applicant for registration of a mark under Trademark Act Section 1 must make bona fide use of its mark *in commerce* prior to *registration*, no such requirement applies to a plaintiff bringing a Section 2(d) claim in an opposition or cancellation proceeding.  Our primary reviewing court, in noting that the plain language of Section 2(d) merely requires a prior mark to have been "used in the United States by another," stated that "a foreign opposer can present its opposition on the merits by showing only *use* of its mark in the United States."  *See First Niagara Ins. Brokers Inc. v. First Niagara Fin. Group Inc.,* 476 F.3d 867, 81 USPQ2d 1375, 1378 (Fed. Cir. 2007) (emphasis in original).  Specifically, the *First Niagara* court found that a Canadian insurance company, operating out of Canada and having no physical presence in the United States, had connections to the United States by way of, inter alia, selling policies issued by United States-based underwriters, and selling policies to United States citizens having Canadian property, and that such connections were sufficient to establish priority.

Here, we find petitioner's allegations to be sufficient to state the element of priority under Trademark Act Section 2(d). Whether such activities constitute use, or use analogous to trademark use, of petitioner's mark sufficient to prove priority, is a matter for trial.[3]  As for the element of

---

[3] With regard to the parties' arguments concerning the territoriality principle as discussed in *Bayer,* we note that, in that proceeding, the allegations going to priority were found deficient because there was a failure to plead that the goods

7

likelihood of confusion, petitioner has alleged that respondent's mark "is likely to cause confusion, mistake, or deception with Petitioner's PEMEX Mark, and/or to cause the mistaken belief by consumers of the parties' respective goods and services and by others that Respondent or its goods or services are in some way affiliated with, sponsored by, or approved by Petitioner, in violation of Lanham Act § 2(d)." (petition, para. 32).

Regarding the fraud claim, respondent argues that each allegation of this claim is made "upon information and belief," and thus "fall far short of the Board's strict requirements for pleading fraud" (Mot. at 4).

The elements of fraud must be pleaded with particularity in accordance with Fed. R. Civ. P. 9(b). *See Asian and Western Classics B.V. v. Selkow,* 92 USPQ2d 1478, 1478 (TTAB 2009). To satisfy Fed. R. Civ. P. 9(b), allegations based on "information

---

bearing petitioner's mark, which were allegedly purchased in the United States prior to respondent's filing date, were manufactured or distributed in the United States by petitioner, or on its behalf, and because the pleading merely alleged that said goods were "authorized by" petitioner. *See Bayer Consumer Care AG v. Belmora LLC,* 90 USPQ2d at 1591. The Board noted that a third party's importation and resale of goods does not by itself constitute "use" without some allegation that the third party was licensed or authorized by petitioner to "use" petitioner's alleged mark *on petitioner's behalf*. *Id.* (emphasis in original). Accordingly, the *Bayer* case clarifies that, for Section 2(d) purposes, allegations of use in the United States by an entity merely selling goods "authorized by" a petitioner, without more, do not sufficiently allege prior use of a mark by the petitioner in the United States. Here, *Bayer* does not operate as a bar to petitioner's claim under Section 2(d), as petitioner clearly alleges that it is petitioner itself who uses the mark in connection with its goods and services. Moreover, in *Bayer*, the Board's discussion of territoriality was in the context of an independent claim that petitioner sought to bring under Article *6bis* of the Paris Convention. The instant case does not involve such a claim.

and belief" must be accompanied by a statement of facts upon which the belief is founded. *Id.,* at 1479, citing *Exergen Corp. v. Wal-Mart Stores Inc.,* 575 F.3d 1312, 91 USPQ2d 1656, 1670 n.7 (Fed. Cir. 2009).

In its petition to cancel, petitioner alleges, in pertinent part:

34. On information and belief, Respondent has never used the PEMEX mark in interstate commerce in connection with any of the goods or services identified in Reg. No. 3,683,663. Indeed, based on the results of an investigation it conducted, Petitioner asserts that Respondent is not currently selling, and has not previously sold, any goods or services in the United States under the PEMEX mark, including the goods and services identified in U.S. Reg. No. 3,683,663.

35. On February 11, 2009, Respondent made a sworn declaration that it was using the PEMEX mark in interstate commerce at least as early as January 1, 2009 in connection with all of the goods and services recited in Reg. No. 3,683,663. On May 20, June 9, and July 22, 2009, in response to follow-up inquiries from the USPTO, Respondent filed substitute specimens with the USPTO and reiterated that it had commenced use of the mark in U.S. commerce at least as early as January 1, 2009 in connection with all of the goods and services in Reg. No. 3,683,663.

36. On information and belief, Respondent's statements of February 11, May 20, June 9, and July 22, 2009 to the USPTO, that it was using the PEMEX mark in interstate commerce in connection with all of the goods and services recited in Reg. No. 3,683,663 at least as early as January 1, 2009, were false.

37. On information and belief, Respondent knew at the time it made the filings on February 11, May 20, June 9, and July 22, 2009 that it had not used the PEMEX mark in interstate commerce in connection with the goods or services identified in Reg. No. 3,683,663.

38. On information and belief, Respondent's statements to the USPTO attesting it was using the PEMEX mark in interstate commerce in connection with all of the goods and services recited in Reg. No. 3,683,663 were material misrepresentations that were intended to

deceive the USPTO into believing that Respondent's Alleged Mark had met the statutory conditions for filing a Statement of Use required to grant a registration for the mark. Such statements were material because the USPTO would not have granted Reg. No. 3,683,663 in the absence of Respondent attesting that it had met these requirements.

39. The USPTO reasonably relied on the truth of such false statements and did in fact grant Reg. No. 3,683,663.

Based on this pleading, petitioner alleges with particularity that respondent knowingly, with the intent to deceive the USPTO, made a material misrepresentation that it was using its mark in commerce in the United States on the identified goods and services as of the time it filed its statement of use, when no such use had been made.[4] In view thereof, petitioner has sufficiently set forth a claim of fraud.

In view of these findings, the petition to cancel adequately states the three pleaded claims on which relief may be granted, and respondent's motion to dismiss is hereby denied.

Schedule

Proceedings are resumed. Respondent's time to answer, and the parties' subsequent conferencing, discovery and trial dates, are reset as follows:

| | |
|---|---|
| Time to Answer | **2/4/2011** |
| Deadline for Discovery | **3/6/2011** |

---

[4] The pleading includes additional allegations relevant to respondent's intent to deceive the USPTO. *See, e.g.,* Para. 16 ("Respondent has repeatedly sought in bad faith to register other institutional entities' famous marks (which are not yet registered in the United States but used elsewhere in the world) in connection with the same goods and services for which those marks are renowned.").

10

| | |
|---|---|
| Conference | |
| Discovery Opens | **3/6/2011** |
| Initial Disclosures Due | **4/5/2011** |
| Expert Disclosures Due | **8/3/2011** |
| Discovery Closes | **9/2/2011** |
| Plaintiff's Pretrial Disclosures | **10/17/2011** |
| Plaintiff's 30-day Trial Period Ends | **12/1/2011** |
| Defendant's Pretrial Disclosures | **12/16/2011** |
| Defendant's 30-day Trial Period Ends | **1/30/2012** |
| Plaintiff's Rebuttal Disclosures | **2/14/2012** |
| Plaintiff's 15-day Rebuttal Period Ends | **3/15/2012** |

In each instance, a copy of the transcript of testimony, together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony. Trademark Rule 2.l25.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Trademark Rule 2.l29.